Feb. 5, 1906.

————O————

## No. 3819.

### Court of Appeal, Parish of Orleans.

### SUCCESSION OF PIERRE MORERE.

Where a person named in a paper purporting to be a last will and testament as executor, presents such paper to a Court for probate, and it is probated; but the paper is subsequently held to be an absolute nullity as a will, because of the notorious insainty of the person executing it, and it is shown that the person who presented it for probate and who qualified as the executor was fully aware of the insanity of the testator the time the paper was executed but who withheld such information from the probate Court, he but practices a gross fraud on the Court by his conduct and cannot recover any commissions as executor.

Appeal from Civil District Court, Division "C."

R. J. Maloney, for Appellant.

Henry Denis & G. V. Soniat, for Appellee.

MOORE, J. This case is a sequence of Suc. Morere reported in the 113 La. 506.

It appears that Bartholomew Morere, a brother of Pierre Morere, deceased, with full knowledge of the notorious insanity of the latter, caused to be probated by ex parte proceedings, a paper, if indeed he did not influence its confection, purporting to be the last will and testament of Pierre Morere by which he, Bartholomew Morere, was named as executor; that said probate was set aside and the will declared null and void, at the suit of the surviving widow and natural tutrix of her children; the executor divested of his trust and the estate ordered turned over to the said widow in her said representative capacity. Suc. Morere 113 La. 506.

Thereafter the late executor filed his final account, placing himself thereon as a creditor for $660.45/100, due him as his commissions as said executor, and charging to the estate a sum of $500.00, due another attorney, who was employed by him to represent him in his said representative capacity in the contest over the validity of the will. These items were opposed by the widow and natural tutrix; and from a judgment dismissing the opposition she appeals.

It may not be doubted that it is the imperative duty of the executor of a last will and testament, who has accepted the trust, to do everything necessary to sustain the validity of the will under which he holds letters of executorship, and, that when he is brought into Court in his official capacity to defend an attack upon the validity of the will which he is executing, he may employ counsel to defend such suit in which, the service of such counsel, and likewise the executor's commissions, whatever may be the result of the litigation, may be chargeable to the estate This is predicated of the theory that the executor is acting in the matter in good faith; for the benefit of all parties in interest, and not for his personal benefit and advantage.

If, however, the person named as the executor of a will is in bad faith; has full knowledge of the absolute nullity of the will; and, as in this case, knows of the notorious insanity of the person making the will at the time of its execution; is himself a secret debtor to the deceased in a large amount, and not only does not reveal these facts on presenting the alleged will to the Court

for probate in order that the validity of the will may be inquired into contradictorily with all parties interested, before any order of probate is made, but who, on the contrary, hurriedly caused the will to be probated and himself to be recognized as executor thereunder, he but perpertrated a fraud on the Court and must personally bear all the expenses which his fraudulent action has entailed.

Still less can he be made a beneficiary of his illegal acts by recovering commissions as executor.

As said in Fenner vs. Suc. McCan 49 A. 608: "An administratior or executor who has a personal interest to defend, or who has committed acts of maladministration, cannot have his interest protected or his illegal acts defended at the expense of 28 A. 183 11 Mar. 327.

In the instant case Bartholomew Morere's conduct was beyond simply defending a "personal interest," and, in a measure, greater than the mere commission of an act of maladmistration. He had practiced, as we have said, a fraud on the Court by presenting and urging for probate, and having probated a paper purporting to be a will, which the Supreme Court in the case, cited, supra, declares he knew was executed at a time when his brother was notoriously insane. He cannot be allowed any commissions and to that extent the judgment will be set aside.

So far as the claim of the attorneys for their fees are concerned we are of the opinion that whilst Bartholomew Morere can be made to reimburse to the estate, in a proper suit filed for that purpose and instituted by the widow and natural tutrix,—those fees as well as all other charges and expenses which his illegal action has imposed on the estate, nevertheless, as these attorneys were acting in absolute good faith in this matter, they should not be made to look to Bartholomew Morere personally for their compensation, whatever may be the rights of the estate as between it and Bartholomey Morere, but should be paid by the estate.

It is therefore ordered adjudged and decreed that the judgment appealed from be and the same is hereby amended to the extent that it dismisses so much of the opposition filed to the item of six hundred and sixty 45/100 dollars claimed by the accountant as his commissions as executor; the opposition to this item being hereby

sustained, and the said sum disallowed; and as thus amended the judgment is affirmed. The cost of the Court as well as that of the lower Court to be paid by the appellee Bartholomew Morere.

Feb. 5, 1906.

## ON REHEARING.

To the previously expressed opinion in this case that "where a person named in a paper purporting to be a last will and testament as executor, presents such paper to a Court for probate, and it is probated; but the paper is subsequently held to be an absolute nullity as a will because of the notorious habitual insanity of the person executing it, and it is shown that the person who presented it for probate and who qualified as the executor, was fully aware of the habitual insanity of the testator at the time the paper was executed, but who withheld such information from the Probate Court, he but practices a gross fraud on the Court by his conduct and cannot recover any commissions as executor," we add "nor any other charges or expense which he has incurred in order to protect his personal interest or to have his illegal acts defended, be imposed to the estate."

MOORE, J. A rehearing was granted in this case on the application of the appellant who complained of so much of our former opinion and decree as recognized the executor's counsel fees as a debt due by the estate, instead of by the executor personally.

No application for rehearing was applied for by the appellee, and, of course, no rehearing was accorded him.

Reflection has convinced us that the complaint of appellant is well founded and that it was absolutely illogical for us to hold that forasmuch as Bartholomew Morere, the executor, was in bad faith and had practiced a fraud on the Court in having the will probated without advising the Court at the time he offered the will for probate of the notorious and habitual insanity of Pierre Morere he could not recover his commissions but that the other expenses which his fraudulent action entailed must be borne by the estate, notwithstanding the estate received no benefit therefrom whatsoever.

We remain fixed in the view originally entertained by us that Bartholomew Morere was in absolute bad faith throughout

158

this entire transaction; that he was a secret debtor of his insane brother, receiving a large sum of money from him on the day the will was executed, though at the time the will was probated the Curatrix of his interdict brother had forced, by suit, Bartholomew to restore the money; that he knew on the day the will was executed, and had known long prior thereto, that his brother, Pierre was habitually insane and that the insanity of his brother was notorious in the locality in whch Pierre lived; that he knew that seven days after the execution of the will his brother was interdicted as being subject to an habitual state of imbercility or madness, and that he himself so testified as a witness in the interdiction suit; that from its execution, on Nov. 12, 1900, the will remained in his possession until it was presented for probate on April 28, 1903, without his ever having mentioned its existence to the wife of Pierre; that it was offered for probate by him and was probated upon the testimony of Mr. Soniat and of Bartholomew simply upon proof that it was entirely written and signed by the testator, no information whatsoever being vouchsafed by him to the Court that at the time of the execution of the will his brother was and had been for months "habitually insane." Not only this but on the trial of the case for the annullment of the will Bartholomew testified that he had never heard anything concerning his brother's insanity until subsequent to the making of the will, to-wit, four days after the will was made and when Pierre was incarcerated in the asylum.

This, and much more, is stated in the opinion of the Supreme Court concerning Bartholomew's connection with this matter. Suc. Pierre Morere 114 La. 506. The Court, as stated, found that Pierre Morere "was habitually insane before, about the time of and after the making of the will," and that Bartholomew was aware of this fact. The Court also found that as matter of law the burden in such cases of proving sanity at the moment of the making of the will rested upon those who are seeking to maintain the validity of the will and that the burden is not shifted by reason of the fact that the expressions and dispositions of the will are intelligent and judicious, unless it be also shown, affirmatively, that the will was made, or declared by the testator himself, unaided and uncontrolled; and it is also found, as a matter of fact, that

159

Bartholomew Morere knew that Pierre had not made the will unaided and uncontrolled.

If, when Bartholomew offered the will for probate, the Court had been advised that Pierre was prior to, and at the time of making the will, habitually insane and that the will was not made by him unaided and uncontrolled can it be supposed for an instant that upon simple proof that the will was entirely written and signed by Pierre the Court would have ordered it probated. Assuredly not.

Bartholomew made no such representations to the Court but on the contrary not only had the will probated by suppressing those facts, but attempted to have it maintained, when subsequently a suit was brought to annul it, by giving testimony that Pierre was sane on the 12th Nov. 1900, which testamony the Supreme Court says "is shown to be untrue."

If withholding all the facts from the Court which if made known would have defeated the probate of the will, is not but practicing a fraud on the Court, then we do know what would constitute a fraud.

No expense incurred by him in his effort to maintain this will can be imposed on the estate, whether that expense be for attorneys fees of for other purposes. Bartholomew Morere must bear all of these personally. Besides this the contest over the question of the annullment of the will was between the minor children of Pierre Morere, who were made parties by citing their under tutor, and who appeared by separate counsel, and who alone were interested in the contest. The executor from the moment had no further interest in the question and certainly not to the extent of employing separate counsel to protect his interest at the expense of the succession. As said in Gerard vs. Babineau 18 A. 603: "From th moment that all the legaties of Marguerite Babineau appeared in Court and filed their answers to the direct action to annul the will, the contest was between them and the heirs, not between the latter and the testamentary executor." In that case the fees of the attorneys representing the executor was held not to be chargeable to the estate.

In Fenner vs. McCann 49 A. 608, the Court said under the decision of this State are uniform that an administrator or execu-

tor who had a personal interest to defend, or who has admitted acts of maladministration, can not have his interest protected or his illegal acts defended at the expense of the Success he represents. And this has been the uniform decision of other jurisdiction.

We are compelled to set aside our former opinion and decree and to maintain the opposition of the widow Morere so far as concerns the executor's commissions and the fees claimed by his attorneys.

It is therefore ordered, adjudged and decreed that our former opinion and decree be set aside and amended and it is now ordered, adjudged and decreed that the judgment appealed from be and the same is hereby amended by striking therefrom so much thereof as rejects the widow Pierre Morere's opposition to the executor's account filed on the 25th June, 1903, and so much thereof as allows the executor to add to his account the sum of three hundred dollars attorney's fees for Henry Denis, Esq.; and it is further ordered, adjudged and decreed that the item of executor's commissions and attorney's fees appearing on said account be striken therefrom and that the claim of Henry Denis to be placed on said account for the sum of three hundred dollars be disallowed. And thus amended the judgment is affirmed. The costs of the appeal as well as those of the lower Court incurred in the trial of the opposition to be paid by appellee.

March 19, 1906.

DUFOUR, J., Dissents.

## DISSENTING OPINION.

1. The executor could not assume the judicial function of deciding that the will was null; it was his duty to offer the will for probate.
2. Executor's commissions are not in law what is termed "a personal interest."

DUFOUR, J. I think that we erred originally in not allowing both the executor commission and the fees of his attorneys, as I am satisfied that in law the executor could not assume the judicial function of assuming that the will was null and was bound to offer the will for probate, and he had no personal interest in

the will. Commissions are not considered as personal interest.

49 An. 608.

Conceding that we cannot pass on the *rights* of errors to the detriment of one who has not asked for a rehearing, still we may properly maintain the judgment in his favor for attorney's fees.

I respectfully dissent.

March 19, 1906.

Writ granted April 23, 1906.